**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


J.M., by and through his parent and     :
natural guardian, JOY BRAUNSTEIN     :
    :
    :
      Plaintiff,     :
    :
    v.     :     Civil Action No. 2:17-CV-997
    :
PITTSBURGH PUBLIC SCHOOL DISTRICT,     :     JUDGE LISA PUPO LENIHAN
    :
      Defendant.     :


**BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

AND NOW, comes Defendant, Pittsburgh Public School District, by and through its attorneys, Aimee R. Zundel, Esquire and Weiss Burkardt Kramer LLC, and files the within Brief in Support of Defendant's Motion for Summary Judgment pursuant to Local Rule of Court 56 as follows:

**<u>Introduction</u>**

Plaintiff J.M., a former elementary-school aged student of the Defendant School District, has raised discrimination claims under Section 504 of the Rehabilitation Act of 1973 (Section 504) and Title II of the Americans with Disabilities Education Act (ADA). Defendant moves for summary judgment because there is no genuine dispute of material fact, Plaintiff has failed to demonstrate that he is entitled as a matter of law to relief on the claims asserted, and lack of subject matter jurisdiction continues to bar Plaintiff's claims. Defendant is, therefore, entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56.

<u>**Standard of Review on Summary Judgment**</u>

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" <u>Wright v. Corning</u>, 679 F.3d 101, 103 (3d Cir. 2012) (quoting <u>Orsatti v. N.J. State Police</u>, 71 F.3d 480, 482 (3d Cir. 1995).

Defendant acknowledges that "[w]hen considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." <u>Wishkin v. Potter</u>, 476 F.3d 180, 184 (3d Cir. 2007). Still, even when taken in a light most favorable to Plaintiff, the evidence of record warrants summary judgment in favor of Defendant.

<u>**Count I & II—Title II of the ADA (Discrimination Based on Disability)**</u>
<u>**Violation of Rehabilitation Act of 1973**</u>

<u>**Relevant Legal Framework**</u>

J.M.'s Complaint alleges that "Plaintiff was denied the benefits of the services, programs, and activities conducted on the campus of Pittsburgh Montessori PreK-5 School when being subjected to verbal, physical, and emotional abuse of classmates, known by teacher and staff" and that "Plaintiff was denied these benefits by being harassed because of his disability." <u>Complaint</u>, Dkt. No. 1, ¶¶ 32 & 33. The Complaint also alleges that "[The District] knew of the harassment and failed to address the bullying incidents known by teachers and staff. None of

the teachers or staff created a learning environment tolerant of children with disabilities. This showed deliberate indifference to the peer-to-peer harassment." Id. at ¶ 35.

Section 202 of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Section 202 of the ADA "extends the nondiscrimination rule of Section 504 of the Rehabilitation Act to services provided by any 'public entity.'" Jeremy H. by Hunter, 95 F.3d 272. The remedies, procedures and rights under the ADA are the same as those under Section 504 and the two claims are treated as analogous. See 42 U.S.C. § 12132; Travis G. v. New Hope-Solebury School Dist., 544 F.Supp.2d 435 (E.D. Pa. 2008) (stating "[i]t has been said that an ADA claim is 'the analogue' of a Section 504 claim). Under both statutes, schools are required to provide a free appropriate public education through special education and related services. See e.g., 34 C.F.R. § 104.33;  28 C.F.R. § 35.103.

Thus, Plaintiff J.M. must prove the following elements by preponderant evidence in order to prevail on his discrimination claims against the District: (1) Plaintiff must be "disabled" as defined by the Act; (2) Plaintiff must be "otherwise qualified" to participate in school activities; (3) the school district receives federal financial assistance; and (4) Plaintiff must have been excluded from participation in, denied the benefits of, or subject to discrimination at, the school. Andrew M. v. Delaware County Office of Mental Health and Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007).  The first three elements are not at issue here, since the Parties

have agreed within their pleadings that Plaintiff is a person with a disability, he was enrolled in and "otherwise qualified" to participate in the school program, and the District receives federal financial assistance. For Plaintiff to prevail, preponderant evidence must be adduced from the undisputed facts demonstrating that he was excluded from participation in, denied the benefits of, or otherwise subject to discrimination at Pittsburgh Montessori.

Denial of the "opportunity to participate in or benefit from defendants' services" does not require that the student be physically prevented from access: "[r]ather, a plaintiff must establish . . . harassment [by] students that is so severe, pervasive, and objectively offensive, and that so undermines and distracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." Davis v. Monroe County Board of Education, 526 U.S. 629, 650-651 (1999).

**Argument**

### I.  Lack of Subject Matter Jurisdiction Acts as a Complete Bar to Plaintiff's Claims.

The Court has a continuing obligation to ascertain whether it has subject matter jurisdiction over J.M.'s claims. Even absent a motion and accompanying brief, a District court can revisit this issue *sua sponte* at any time, since the court has an independent obligation to confirm that subject-matter jurisdiction exists. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). The Second Circuit directly addressed this issue, at a similar stage of the proceedings as here, in Mastafa v. Chevron Corp., 770 F.3d 170 (2nd Cir. 2014):

> [W]e note that although a district court might deny a motion to dismiss brought pursuant to Rule 12(b)(1) if it concludes that the *complaint* passes jurisdictional muster, that does not obviate the district court's continuing obligation to ensure its own jurisdiction as the case proceeds to discovery. If subsequent materials in the record cast sufficient doubt upon the allegations in the complaint that formed the basis for the

court's subject-matter jurisdiction, the court must revisit the question
of its jurisdiction *sua sponte*, or upon a party's motion.

<u>Mastafa</u>, 770 F.3d 170, 186-87.

J.M.'s Section 504 and ADA claims are subject to exhaustion. The strong policy requiring exhaustion extends to plaintiffs who assert Section 504 and ADA violations that relate to the provision of a free appropriate public education (FAPE). See <u>Fry v. Napoleon Community Schools</u>, 137 S.Ct. 743 (U.S. 2017); <u>Batchelor v. Rose Tree Media Sch. Dist.</u>, 759 F.3d 266, 272–73 (3d Cir. 2014). Section 1415(l) of the Individuals with Disabilities Education Act (IDEA), provides that prior to the filing of a civil action under Section 504 or the ADA when the plaintiff is seeking relief also available under IDEA, the plaintiff must first exhaust administrative remedies under IDEA.[1] 20 U.S.C. § 1415(l). The IDEA's administrative remedies include a mandatory resolution period, an impartial due process hearing, and an appeal in the event the party is aggrieved in the hearing.[2] 20 U.S.C. § 1415(f)(3)(E)(i).

A lawsuit need not use the specific "denial of FAPE" language, in order to be subject to administrative exhaustion. <u>Fry v. Napoleon Community Schools</u>, 137 S.Ct. 743, 752 (2017). The Court must look to the substance, or "gravamen," of the Plaintiff's claims to determine whether exhaustion is triggered. The Court should focus on whether the basic relief sought by Plaintiff is

---

[1] Specifically, Section 1415(l) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter*. 20 U.S.C. § 1415(l) (emphasis added).

[2] To date, J.M. nor his parents have filed a state-level administrative due process hearing.

in the nature of a FAPE denial, and less on whether the complaint includes key words such as "IEP," or "FAPE." Id. at 756. Moreover, the Court must examine the claims' substance "to ensure plaintiffs do not evade the IDEA's exhaustion requirement by artful pleading," or, by logical extension, inartful pleading. Id. at 755-756.

Two hypothetical questions must be reviewed in the context of determining the gravamen of the claims:

(1) "[C]ould the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library?"; and

(2) "[C]ould an adult at the school—say, an employee or visitor—have presented essentially the same grievance?"

Fry, 137 S.Ct. at 756.

If the answer to both questions is "yes," a complaint that does not expressly allege denial of a FAPE is also unlikely to be truly about that subject. Id. However, if the answer to both of those questions is "no," then the complaint probably does concern a FAPE, even if it does not expressly say so. Id.

The answers to each hypothetical Fry question are "no" in regard to J.M.'s claims. To find otherwise after a plain read of J.M.'s complaint and other evidence of record, which is appended hereto, would be illogical. "It is only in an educational setting involving a child that the claim makes sense." See Tawes v. Bd. of Educ. of Somerset Cty., No. RDB-17-2375, 2017 WL 6313945, at *5 (D. Md. Dec. 11, 2017) (gravamen of claims involved allegations that a male student with disabilities was bullied by other students during a summer school program and claims were, therefore, subject to exhaustion). Plaintiff J.M.'s complaint specifically alleges that the District created "an abusive educational environment" and that the District failed to, among other things,

"educat[e] the classroom, teaching staff or administration" on Plaintiff's ailment and furthermore, as a result, Plaintiff was "denied the benefits of receiving an education in a harassment-free environment." Complaint, Dkt. No. 1, ¶¶ 34, 42(d), and 41.

However, most telling in Plaintiff's Complaint, is the allegation that the District violated Section 504 by "[n]ot changing Plaintiff's 504 Service Agreement to reflect the negative interactions between Plaintiff and classmates to appropriately deal with future problems." Complaint, Dkt. No. 1, ¶ 42(e). Plaintiff alleges in his Complaint that the District failed to update J.M.'s 504 Service Agreement to reflect the recent bullying J.M. had endured, and that as a result of the District's "deliberate indifference" to the harassment, J.M. was "denied the benefits of receiving an education in a harassment-free environment"—in other words, that J.M. was denied a FAPE. Complaint, Dkt. No. 1, ¶¶ 43 & 41.

The Supreme Court's decision in Fry v. Napoleon Community Schools, interestingly, preceded Plaintiff's complaint by only a few months.[3] 137 S.Ct. 734 (U.S. 2017). However, since that time courts in both our Third Circuit and other federal jurisdictions have reviewed and applied Fry's holding. The Third Circuit has examined Fry in several decisions throughout the past several years, including Wellman v. Butler Area Sch. Dist., 877 F.3d 125, 127 (3d Cir. 2017) (gravamen of student's claims were denial of FAPE, and exhaustion was required) and J.L. by and through Leduc v. Wyoming Valley West Sch. Dist., 722 Fed.Appx. 190, 192 (3d Cir. 2018) (appellate court affirmed district court's dismissal of claims relating to use of restraints during

---

[3] Fry was decided on February 22, 2017 and Plaintiff's Complaint was filed July 28, 2017. Complaint, Dkt. No. 1.

school transportation for lack of subject matter jurisdiction and failure to exhaust administrative remedies).

There is no Western District case specifically discussing and applying Fry, as of the date of Defendant's Brief; however, there are several relevant U.S. District Court decisions from both the Eastern and Middle Districts. One such case is Rohrbaugh v. Lincoln Intermediate Unit, 255 F.Supp.3d 589 (M.D.Pa. 2017). In Rohrbaugh, the parent of a child with a disability raised Section 504, ADA, constitutional and common law claims relating to a physical restraint of her child in the school setting. 255 F.Supp.3d 589, 591. The Court, after an extensive analysis of Fry, found the Plaintiffs' complaint sought relief available under IDEA – "namely, the denial of a FAPE to [student]," and those claims had to be exhausted. Id. at 596-597. The Court granted Defendant Intermediate Unit's motion to dismiss. Rohrbaugh, 255 F.Supp.3d at 598. All told, the instant matter is analogous to Wellman, J.L., and Rohrbaugh, and the District urges this Court to reach a finding that is consistent.

In another United States District Court case, K.M. by and through C.M. v. Board of Education of Montgomery County, No. PX-17-2759, 2019 WL 330194, *1-2 (D.Md. Jan. 25. 2019), a plaintiff brought ADA claims relating to the communication accommodations provided to student. Upon review of the pleadings and the Supreme Court's Fry decision, the Court informed the parties that it intended to dismiss the complaint. Id. at *2. The crux of claims implicated denial of FAPE, even though Plaintiff had not pleaded IDEA claims. Id. The parties agreed to stay federal proceedings in the U.S. District Court so that administrative remedies could be pursued. Id. Plaintiffs later amended their federal complaint and asserted that they had fully exhausted IDEA administrative remedies. Id. at *3. Defendants moved to dismiss. Id. The Court held that

the exhaustion requirement was triggered because K.M.'s claim was, at its core, a claim for relief available under the IDEA for "denial of an appropriate education."  K.M., at *5 (citing Fry, 137 S.Ct. at 175).

Also informative to the exhaustion discussion and subject matter jurisdiction are two other U.S. District Court decisions – one from Maryland and one from North Carolina.  In Tawes v. Bd. Of Educ. of Somerset Cty., No. RBD-17-2375, 2017 WL 6313945 (D.Md. Dec. 11, 2017), Plaintiff's negligence, Title VII and educational malpractice claims were, at their core, denial of FAPE claims prompting the need for exhaustion.  Therefore, the plaintiff student with several disabilities, who – much like J.M. – asserted school bullying claims, was unable to prevail at the motion to dismiss stage of litigation.  Id. at *2-5.  Similarly, in Vlasaty v. Wake Cty. Pub. Sch. Sys. Bd. Of Educ., No. 5:17-CV-5780D, 2018 WL 4515877 (E.D.N.C. Sept. 20, 2018), plaintiff's ADA, Section 504 and Section 1983 claims were "uniquely tied to the school environment and to [Plaintiff child's] status as a student within the school" and were subject to administrative exhaustion per Fry.  Id. at *7.  All claims were school-specific and dealt with the proper setting in which Plaintiff should be educated.  Id.  "Plaintiffs could not bring substantially the same claims against other public facilities."  Vlasaty, 2018 WL 4515877 at *6.

Like the claims brought in Vlasaty and Tawes, J.M.'s claims at their very core relate to his educational experience and whether the District provided him with a free appropriate public education.  In fact, in review of student Section 504 claims, Courts are required to determine whether the student received the free appropriate public education (FAPE) to which they were entitled from the school district.  See D.K. v. Abington Sch. Dist., 696 F.3d 233, 253 n. 8 (3d Cir.2012).

This Honorable Court does not have subject matter jurisdiction to hear and decide Plaintiff's claims, because Plaintiff has failed to exhaust his administrative remedies. Plaintiff's Section 504 and ADA claims relating to disability accommodations provided through his 504 Plan, and his peer-on-peer harassment claims, should have first been heard by a due process hearing officer, pursuant to the IDEA. J.M.'s claims are exactly the kind of claims that are subject to the exhaustion requirements. Because the IDEA statutory scheme relating to administrative remedies is implicated in this case, and because the Plaintiff failed to exhaust those administrative remedies, the Court lacks subject-matter jurisdiction and should, accordingly, dismiss the Complaint.

## II. The Case Presents No Genuine Issues of Material Fact.

Plaintiff contends there are issues of material fact which prompt a need for a jury trial in this matter. <u>Complaint</u>, Dkt. No. 1. In response, Defendant would normally point Plaintiff back to the administrative due process hearing that is available to hear and decide Section 504 and ADA claims that relate to the provision of an appropriate education to eligible children. Such proceedings are favored in Section 504 educational claims because they serve to develop a factual record, and result in findings of fact and conclusions of law which can then be appealed by an aggrieved party. But, since this lawsuit has been initiated in the federal district court, Defendant will point to case law in support of its position that while the parties do not see the facts in the same way, there are no genuine issues of material fact in the legal sense.

The mere existence of factual dispute does not, by itself, preclude the granting of summary judgment in the event that there are no genuine issues of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The materiality of a fact pertains to whether the

facts are of the sort that might affect the outcome of the suit under the governing law. Where there is, however, a disputed issue of material fact, summary judgment is still only appropriate if the factual dispute is not a genuine one. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

While there may be issues of fact in this case, there are no genuine issues of material fact. In order to prevail on his Section 504 and ADA claims, Plaintiff J.M. must prove that he was denied the benefits of the public school program and suffered intentional discrimination at the hands of school actors. <u>S.H. ex rel. Durrell v. Lower Merion Sch. Dist.</u>, 729 F.3d 248, 263 (3d Cir. 2013). No acts of intentional discrimination are alleged in Plaintiff's Complaint. <u>See</u> <u>Complaint</u>, Dkt. No. 1. Rather, Plaintiff appears to allege that the school acted with deliberate indifference to bullying J.M. experienced. <u>S.H. ex rel. Durrell v. Lower Merion Sch. Dist.</u>, 729 F.3d 248, 263 (3d Cir. 2013) (short of demonstrating intentional discrimination, a Plaintiff must, at least, demonstrate deliberate indifference in order to succeed on the merits of a disability discrimination claim).

There are several problems with the framing of Plaintiff's deliberate indifference claim, which ultimately prevent this Court from reaching a finding in Plaintiff's favor.

a. **Plaintiff fails demonstrate that the District and its employees were deliberately indifferent to J.M.'s negative peer interactions.**

First, Plaintiff does not plead or develop facts which show the school to be deliberately indifferent. Deliberate indifference requires that the District had knowledge that a federally protected right was at risk of being violated and a failure to act despite that knowledge. <u>Id.</u> at 265. Further, the failure to act must rise above the level of culpability attendant in mere negligence or bureaucratic inaction. <u>See</u> <u>Chambers v. Sch. Dist. of Phila. Bd. of Educ.</u>, 537 Fed.

Appx. 90 (3d Cir. 2013) (holding that the school district knew a student was denied an educational benefit and failed to act appropriately in a way that rose above mere negligence).

Deposition testimony in this matter and documentary evidence demonstrate the exact opposite of "deliberate indifference." Pittsburgh Montessori staff engaged in a consistent pattern of communication and responsive action to each report of teasing or bullying received from Plaintiff's parents.[4] Both parties agree that the District, on four (4) occasions, completed a Bullying-Harassment Complaint Investigation Report into alleged incidents of bullying. Therefore, it cannot be argued that the District "failed to act" after learning that the Plaintiff had been subjected to bullying or teasing. As such, Plaintiff fails to demonstrate a genuine issue of material fact relating to whether the District was deliberately indifferent, and the District should be awarded summary judgment.

**b. Plaintiff fails to demonstrate that the negative peer interactions J.M. experienced were incidents of disability harassment.**

Simply because a disabled person was bullied does not, without more, compel the conclusion that the bullying was based upon the disability. Eskenazi-McGibney v. Connetquot Central Sch. Dist., 84 F.Supp.3d 221, 232 (E.D.N.Y. 2015). A plaintiff does not state a claim under the ADA and Section 504 absent some factual allegation linking the disability and the bullying. Id. at 233. "To hold otherwise would convert the ADA and Rehabilitation Act into generalized anti-bullying statutes." Id. Yet, even federal bullying case law acknowledges the outside extent of a school district's responsibility for the acts of third parties against a Plaintiff. See Morrow v. Balaski, 719 F.3d 160 (3d Cir. 2013) (the Circuit Court, affirming the Honorable Judge Lenihan's

---

[4] Plaintiff himself, in fact, never reported bullying or teasing. Each report was received from Plaintiff's parents either verbally or through email correspondence.

dismissal of Plaintiffs' complaint, acknowledged that public school officials generally do not have a constitutional duty to protect bullied students from the acts of a peer bully).

While the Plaintiff's Complaint is rife with factual allegations of the Plaintiff "being bullied," none of these facts link the bullying to Plaintiff's disability. The specific acts cited are Plaintiff being called "a dummy," and having a "kick-me" sign placed on his back, prompting a student to kick him in the back. Complaint, Dkt. No. 1, ¶¶ 22 & 29. There is also factual record of an incident in September 2016 wherein a Pittsburgh Montessori parent stated "he hits people" in reference to the Plaintiff within earshot of others in the school setting. Another incident involved a "carrot club" created by peers, since Plaintiff had an aversion to carrots. Overall, the complete absence of any factual allegation that links the described instances to the Plaintiff's disability is a fatal flaw to Plaintiff's case.

By contrast, a recent opinion from California highlights the type of allegations which *will* demonstrate conduct on the basis of disability. In Wagon v. Rocklin Unified School District, 2:17-cv-01666-TLN-KJN, 2019 WL 2577336 (E.D.Cal. June 24, 2019), a parent claimed that a District bus driver subjected her child to repeated verbal, physical, psychological, and emotional abuse on the basis of his disability. Id. at *1. The child was nonverbal and had been diagnosed with cerebral palsy. Id. Specifically, the parent alleged that the bus driver's statements – including "he's such a brat" "you almost look like you know what you're doing;" and "oh, he's a pisser this morning" – were prompted by her child's disability-related behavior. Id. Parent's complaint "allege[d] that [the driver] directed disability-related epithets and derogatory comments toward [the child] when he urinated while on the bus, or engaged in repetitive movements or in touching, lifting, or moving items as a result of his disability." The parent's complaint included the requisite

level of specificity and disability-related animus to survive the school district's motion to dismiss under Rule 12(b)(6). Id. at *7.

Plaintiff J.M.'s Complaint was required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). Plaintiff's Complaint does not contain any statements or averments that prompt entitlement to Section 504 or ADA relief for disability discrimination. For this reason, it is an unmeritorious claim which should be disposed of on summary judgment.

### III. Plaintiff has not Demonstrated through Preponderant Evidence that he was Discriminated Against with Deliberate Indifference, and Defendant is Entitled to Judgment as a Matter of Law.

Plaintiff J.M. is required to prove that the District engaged in intentional discrimination or, at the very least, acted with deliberate indifference. S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 263 (3d Cir. 2013). Deliberate indifference is a two-pronged inquiry, which examines: (1) whether the District had knowledge that J.M.'s federally protected right was substantially likely to be violated; and (2) whether the District failed to act despite that knowledge. Id. at 265. The first prong of the deliberate indifference inquiry is not satisfied by anything less than actual knowledge that a federally protected right was in danger of being violated – "allegations that one would have or 'should have known' will not satisfy the knowledge prong . . . " Id. at 266 n.26. Moreover, school actors must engage in "a deliberate choice, rather than negligence or bureaucratic inaction," to be found liable for discrimination with deliberate indifference. S.H. ex rel. Durrell, 729 F.3d at 263.

The Plaintiff asserts a conclusory statement under Count I in the Complaint that "Plaintiff was denied these benefits by being harassed because of his disability," but, critical to the outcome here, there is no factual allegation that supports this conclusory statement. Plaintiff fails to state a claim under the ADA and Section 504 of the Rehabilitation Act. See Eskenazi-McGibney, 84 F.Supp.3d at 233 (holding that the plaintiff failed to state a claim under the ADA and Section 504 because "the complaint does not offer a non-conclusory answer" to the reason for the bullying, i.e., whether it was due to his disability).

### Conclusion

Plaintiff's Complaint taken alone fails to adduce any genuine issue of material fact on the topic of disability discrimination. Taken together with deposition testimony and relevant documents produced by the District, the record is completely devoid of any genuine issue of fact which could lead to a verdict for Plaintiff on his discrimination claims. J.M. bears the burden to demonstrate that the District acted with deliberate indifference – that is, (1) with knowledge that a federally protected right was substantially likely to be violated, and (2) failure to act despite that knowledge. The Plaintiff has failed to establish facts sufficient to support such a finding of intentional discrimination.

WHEREFORE, for all the foregoing reasons, Defendant, Pittsburgh Public School District, respectfully requests this Honorable Court to grant summary judgment in favor of Defendant.

Date: July 1, 2019                                    Respectfully submitted,

By:_____

            Aimee R. Zundel, Esquire

Pa. I.D. #208694
**WEISS BURKARDT KRAMER, LLC**
445 Fort Pitt Boulevard, Suite 503
Pittsburgh, PA 15219
412-391-9890
azundel@wbklegal.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Aimee R. Zundel, Esquire, do hereby certify that I electronically filed the foregoing Brief in Support of Defendant's Motion for Summary Judgment with the Clerk of Court on July 1, 2019 using the CM/ECF system which will notify the following of the filing of the same:

Jennifer O. Price, Esquire
3950 William Penn Highway, Suite 6
Murrysville, PA 15668
jprice@jenniferpricelaw.com

Respectfully submitted,

By:_____

Aimee R. Zundel, Esquire
Pa. I.D. #208694
**WEISS BURKARDT KRAMER, LLC**
445 Fort Pitt Boulevard, Suite 503
Pittsburgh, PA 15219
412-391-9890
azundel@wbklegal.com